MCM:FTB/NJM
2019R00559

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

JASON HOPE,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR AN ARREST WARRANT

(21 U.S.C. §§ 960(b)(1)(B)(ii) and 963)

No. 19-MJ-322

EASTERN DISTRICT OF NEW YORK, SS:

      JERRY DI NAPOLI, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

      On or about April 3, 2019, within the Eastern District of New York and elsewhere, the defendant JASON HOPE, together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1).

      (Title 21, United States Code, Sections 960(b)(1)(B)(ii) and 963)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been involved in numerous investigations of narcotics smuggling involving international airports and individuals working oversees to transport narcotics into the United States. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2. Since in or about September 2016, law enforcement agents with HSI, the Drug Enforcement Administration ("DEA") and United States Customs and Border Protection ("CPB"), among other agencies, have been investigating a narcotics importation conspiracy involving certain individuals who either have worked, or are working, at John F. Kennedy International Airport ("JFK").

3. In connection with this investigation, since in or about February 2017, HSI has been working with a confidential source (the "CS").[2] The CS has had multiple conversations with a former baggage handler for Delta Airlines at JFK ("Co-Conspirator 1").

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] The CS is an individual who is present in the United States without legal status. The CS is cooperating with law enforcement in exchange for immigration benefits and also receives payment for his information. As discussed below, the CS's information has been corroborated in multiple respects including by direct observation by law enforcement agents.

Through multiple conversations with Co-Conspirator 1 beginning in or about November 2018, and through the CS's personal dealings with Co-Conspirator 1, the CS is knowledgeable about Co-Conspirator 1's involvement in criminal activity and, as discussed in detail below, has advised law enforcement personnel that Co-Conspirator 1 and others are currently involved in schemes to possess narcotics with the intent to distribute them.

4.  In or about March 2019, Co-Conspirator 1 offered to assist the CS in importing cocaine from Sint Maarten to JFK, if the CS could arrange for the cocaine to be placed on a flight from Sint Maarten. Based on my review of Co-Conspirator 1's conversations with the CS and the recordings of the CS's conversations, I am aware that Co-Conspirator 1 and the CS agreed that Co-Conspirator 1 would arrange for five one-kilogram bricks of cocaine to be removed from Delta Airlines Flight 300, a direct flight from Simpson Bay, Sint Maarten, to JFK, on April 3, 2019 (the "Flight"), and delivered to the CS. I am further aware that the CS informed Co-Conspirator 1, in sum and substance and in part, that the five bricks would be concealed within a pink drawstring Under Armour bag and a purple suitcase, including by sending several images—some depicting visible bricks consistent in appearance with kilograms of cocaine—showing the pink bag next to the purple suitcase to Co-Conspirator 1 via WhatsApp. Before bags from the Flight were unloaded, law enforcement agents placed a pink drawstring Under Armour bag containing five brick-like "sham" packages made to approximately resemble cocaine bricks in the cargo hold of the airplane.[3]

---

[3]  Each brick of sham cocaine was sized to resemble, in weight and appearance, a one-kilogram brick of cocaine, but the exact weight of the sham cocaine is unknown at this time.

5. As a result of electronic and physical surveillance of the packages conducted by law enforcement, when the Flight arrived at JFK, law enforcement agents were generally able to track the movements of the sham cocaine packages. In sum and substance and in part, based on this surveillance, law enforcement agents observed the packages of sham cocaine leaving the vicinity of the airplane, being moved through the airport and subsequently appearing outside of the airport buildings area. Based on the physical and electronic surveillance, it appeared that a person with access to the ramp on which luggage from the Flight was unloaded had removed the purple suitcase containing the pink bag that contained the packages of sham cocaine and separated it from the rest of the luggage from the Flight.

6. Law enforcement agents arrested Co-Conspirator 1 in possession of the packages of sham cocaine. After being advised of and waiving his Miranda rights, Co-Conspirator 1 admitted to law enforcement agents, in sum and substance and in part, that he had agreed with others to import five kilograms of cocaine into the United States from Sint Maarten.

7. In addition, Co-Conspirator 1 gave oral consent to agents from HSI to review some of the contents of the cellular telephone in his possession at the time of his arrest. Based on a review of the telephone, law enforcement agents were able to confirm that it was the same telephone that Co-Conspirator 1 was using to communicate with the CS.

8. In reviewing some of the contents of Co-Conspirator 1's telephone, law enforcement agents discovered a WhatsApp conversation between Co-Conspirator 1 and an individual entered into the telephone as "J Fam," to whom Co-Conspirator 1 had sent

messages, including the images sent to Co-Conspirator 1 from the CS, depicting the bags containing sham cocaine that were supposed to be removed from the airplane.

9. Based on my training and experience, as well as the investigation thus far, it is my belief that "J Fam" is the defendant JASON HOPE. Specifically, from my knowledge, training, and experience, I know that a WhatsApp account number corresponds to a user's actual cellular telephone number. The WhatsApp account number in Co-Conspirator 1's telephone associated with "J Fam" (the "J Fam Telephone") is the same as the telephone number used by HOPE. Based on the investigation, I am aware that HOPE listed the J Fam Telephone as his contact information in official paperwork on file with the Port Authority of New York and New Jersey.

10. On or about April 3 and 4, 2019, Co-Conspirator 1 placed three consensually recorded telephone calls to "J Fam" over the WhatsApp electronic messaging application. During the first call, "J Fam" told Co-Conspirator 1, in sum and substance and in part, that "J Fam" was nervous because he had not heard from Co-Conspirator 1 for some time. Co-Conspirator 1 advised "J Fam," in sum and substance and in part, that he was "good" and that he had to "check that shit out," meaning that he had to inspect the quality and quantity of the cocaine that had arrived from Sint Maarten. Co-Conspirator 1 then advised "J Fam," in sum, substance, and in part, that the shipment was "good" and that payment to "J Fam" would likely be available in the next couple of days. During the second WhatsApp call, "J Fam" and Co-Conspirator 1 discussed, in sum and substance and in part, how much money "J Fam" was to receive for pulling the bag from the airplane and agreed in sum and substance that "J Fam" would receive $15,000.

11.     During the third call, in sum and substance and in part, Co-Conspirator 1 informed "J Fam" that "he" had sold "two in Brooklyn" and was taking the other three to Pennsylvania.  Based on my training, experience and familiarity with the investigation, I believe that, during this conversation, Co-Conspirator 1 was telling "J Fam" that the CS had sold two kilograms of cocaine in Brooklyn and was selling the other three in Pennsylvania. Co-Conspirator 1 then said that the "bread would probably be here tomorrow," which, based on my training, experience and investigation to date, I believe was a reference to the CS's payment ("bread") to Co-Conspirator 1 and "J Fam" the following day.  Co-Conspirator 1 further stated that the CS had asked to "do 20 on Saturday," which, based on my training, experience and familiarity with the investigation, I understand to mean that the CS had asked Co-Conspirator 1 to import 20 kilograms of cocaine on Saturday.  Co-Conspirator 1 also asked "J Fam," in sum and substance and in part, whether the 20 kilograms should be placed in one bag or two.  "J Fam" replied, in sum and substance and in part, that it should be in one bag, but also advised that he and Co-Conspirator 1 should "get our shit" before doing anything.  Based on my training, experience, and the investigation to date, I believe that when "J Fam" said that they should "get our shit," he meant that he and Co-Conspirator 1 should be paid the money that they were owed for the prior importation before helping to import a new shipment of cocaine.

7

WHEREFORE, your deponent respectfully requests that the defendant JASON HOPE be dealt with according to law.

                                                                                        JERRY DI NAPOLI
                                                                                        Special Agent, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this
9 day of April, 2019

_____  S/ Lois Bloom
THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK